UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:18-CV-00054-HBB

ALLEN CHINN                                                                                    PLAINTIFF

VS.

NANCY A. BERRYHILL, Acting
**Commissioner of Social Security**                                                DEFENDANT

## MEMORANDUM OPINION AND ORDER

BACKGROUND

Before the Court is the complaint (DN 1) of Allen Chinn seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 17) and Defendant (DN 22) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is REVERSED, and this matter is REMANDED pursuant to 42 U.S.C. § 405(g), to the Commissioner for further proceedings.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11). By Order entered July 17, 2018 (DN 12), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

Chinn filed an application for disability insurance benefits on October 25, 2013 (Tr. 328). He also filed an application for supplemental security income on September 30, 2013 (Tr.336). In both applications, Chinn alleged that he became disabled on September 5, 2013 as a result of: heart murmur; heart attack; triple bypass surgery; crushed right shoulder; "messed up C5, C6 and C7;" and severed hand tendons (Tr. 151). Administrative Law Judge Amber Downs ("ALJ") conducted a hearing on August 13, 2015 in Paducah, Kentucky. A second hearing was conducted via video on March 1, 2017. The ALJ participated from Tampa, Florida and Plaintiff represented by counsel, Sara J. Martin, participated from Owensboro, Kentucky. Also present and testifying at the 2015 hearing was Tom Wagner, M.D. an impartial medical expert and Kenneth Boaz, an impartial vocational expert. At the 2017 hearing, Thomas Passo, M.D. testified as an impartial medical expert and Lynn Jones as an impartial vocational expert.

In a decision dated April 10, 2017, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 19-29). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 5, 2013, the alleged onset date (Tr. 19). At the second step, the ALJ determined that Plaintiff's ischemic heart disease, depression, anxiety, degenerative disc disease, avascular necrosis of left hip, and degenerative joint disease are "severe" impairments within the meaning of the regulations (Tr. 19). Notably, at the second step, the ALJ also determined that Plaintiff's hypertension and insomnia are "non-severe" impairments within the meaning of the regulations (Tr. 19). At the third step, the ALJ concluded that prior to October 12, 2015, the date Chinn

became disabled, he did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 20).

At the fourth step, the ALJ found that prior to October 12, 2015, the date Chinn became disabled, he had the residual functional capacity to perform less than a full range of sedentary work (Tr. 21). More specifically, the ALJ found that Chinn can lift 10 pounds occasionally and less than 10 pounds frequently; stand/walk two hours in a workday; and sit 6 hours in a workday. He can occasionally climb ladders, ropes and scaffolds. He can occasionally be exposed to extreme cold and heat. He can occasionally perform right overhead reaching and frequently perform all other reaching on the right. He needs a sit/stand alternative after a period of 30 minutes. He is limited to simple routine tasks, occasional complex or detailed tasks, occasional contact with the general public and supervisors. He can have no sustained attention to detail and no strict quota based or face paced work environments. He cannot work in a loud or confusing work environment. (Tr. 21-22). Relying on testimony from the vocational expert, the ALJ found that since September 5, 2014, Chinn has been unable to perform any of his past relevant work (Tr. 27).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 27-28). The ALJ found that prior to October 12, 2015 Chinn is capable of performing a significant number of jobs that exist in the national economy (Tr. 27). The ALJ determined that beginning on October 12, 2015 the severity of claimant's impairments met the criteria of 4.04C of 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 28). Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 326-27). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-7).

3

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-7). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

## The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age,

education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Challenged Findings

1. Step Two

Chinn first argues that there is not substantial evidence to support the ALJ's failure to recognize his avascular necrosis of the right shoulder as a severe impairment (DN 17-1 PageID # 3126). He alleges this impairment should have been classified as severe and properly accommodated in the ALJ's residual functional capacity (RFC) assessment. Chinn contends the ALJ's decision is unsupported by the medical records, and if properly considered would have led to a finding that he was disabled prior to October 12, 2015 (Id.). The Commissioner responds arguing that the decision not to consider Chinn's impairment severe is irrelevant because she gave it due consideration when determining Chinn's RFC (DN 22 PageID # 3146-47). The Commissioner adds that the ALJ supported her RFC finding with substantial evidence and Chinn has failed to demonstrate a reversible error (Id. at 3147-48).

At the second step in the sequential evaluation process a claimant must demonstrate he has a "severe" impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam). To satisfy this burden, the claimant must show he suffers from a "medically determinable" physical or mental condition that satisfies the duration requirement and "significantly limits" his ability to do one or more basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c); Social Security Ruling 96-3p; Social Security Ruling 96-4p; Higgs, 880 F.2d at 863. Alternatively, the claimant must show he suffers

from a combination of impairments that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii) and (c). An impairment can be considered not severe only if it is a slight abnormality that minimally effects work ability, regardless of age, education and work experience. Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir. 1988) (citing Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 89-90 (6th Cir. 1985)).

According to the regulations, upon determining that a claimant has at least one severe impairment, the ALJ must continue with the remaining steps in the disability evaluation outlined above. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c). Here, the ALJ found ischemic heart disease, depression, anxiety, degenerative disc disease, avascular necrosis of the left hip, and degenerative joint disease to be severe impairments (Tr. 19). Chinn argues the ALJ should have also have considered his avascular necrosis of the right shoulder as a severe impairment (DN PageID # 3127). However, it is unnecessary to determine if the ALJ erred in failing to find the avascular necrosis a severe impairment. Even if Chinn could show the ALJ's finding was not supported by substantial evidence, that error alone is insufficient to reverse and remand the ALJ's decision. *See* Maziarz v. Sec'y of Health & Human Servs., 87 F.2d 240, 244 (6th Cir. 1987). If an Administrative Law Judge finds that other impairments are severe and considers all of a claimant's impairments in the remaining steps, the error is harmless. Maziarz, 837 F. 2d at 244. The ALJ found Chinn had several severe impairments and continued with the sequential evaluation process. Thus, the undersigned must determine whether the ALJ adequately considered Chinn's avascular necrosis of the right shoulder in the remaining steps in the evaluation process, most importantly during the residual functional capacity analysis.

The ALJ did address Chinn's shoulder pain in her RFC analysis. She mentioned that Chinn crushed his right shoulder after falling down the stairs "several years ago" and that it was "repaired" in 2015 but reported minimal improvement and continued pain and limited mobility (Tr. 22). The ALJ noted that Chinn first reported experiencing shoulder pain in September 2015 (Tr. 24). An MRI at that time showed severe glenohumeral joint degenerative arthritis. Superimposed local humeral head avascular necrosis was suspected (Tr. 24, 2217). Chinn underwent steroid injections and experienced little improvement. A second MRI revealed advanced degenerative changes with ischemic necrosis in the humeral head. Chinn underwent surgery to repair his shoulder in October but entered cardiac arrest during the procedure (Tr 24, 2138). A second attempt was made just weeks later and was successful (Tr. 24, 2140).

Chinn is arguing that these shoulder issues amounted to a severe impairment and rendered him disabled prior to October 12, 2015—the date the ALJ determined he became disabled. Unfortunately, Chinn has not offered a date he believes his shoulder issues became so severe that he was unable to work. Ostensibly, that date is September 5, 2013—the date Chinn alleged he became disabled on his application for Social security benefits—but Chinn was unaware of this disability at that time. Chinn included a "crushed right shoulder" as a reason for his disability on his original application. However, he has not cited, nor has the undersigned discovered, any medical records that connect Chinn's crushed right shoulder with his subsequent diagnosis of advanced degenerative ischemic necrosis. Chinn offers nothing but his own testimony that his hand sometimes went numb and the assertion that "this did not happen overnight, but overtime to support his claim" (DN 17-1 PageID# 3127).

Without more, the undersigned cannot reverse the ALJ's decision. The plaintiff has the burden of providing sufficient medical evidence to enable the Administrative Law Judge to make a determination. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 214 (6th Cir. 1986); 20 C.F.R. §§ 404.1512(c), 404.1513(d) 416.912(c), 416.913(d). Chinn points to Dr. Passo's opinion to support his claim (DN 17-1 PageID # 3127, Tr. 2600-2612). Dr. Passo is a cardiologist. His opinion is based on his knowledge of Chinn's heart condition, not his shoulder. Chinn claims that Dr. Passo's opinion was "vocationally preclusive" (Id.) But, Dr. Passo's recommendations are consistent with the finding that Chinn is capable of sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting light objects. The work involves sitting, walking, and standing occasionally. 20 C.F.R. § 404.1527. Dr. Passo opined that Chinn can lift no more than 10 pounds occasionally and has the ability to reach, handle, finger, feel, push or pull (Tr. 2600-2612).

The ALJ afforded some weight to Dr Passo's opinion because it was issued before Chinn's shoulder surgery that resulted in cardiac arrest on October 15, 2015 (Tr. 26). The ALJ found Chinn became disabled on that date. Nothing in Dr. Passo's records indicate that Chinn could not perform sedentary work prior to that date. The medical records show that Chinn first reported shoulder pain in September 2015 (Tr. 24). He was being treated by an orthopedist for hip issues for at least one year prior to that date and never reported shoulder pain (Tr. 24). This severely undercuts Chinn's claim that his ischemic necrosis was a severe impairment that rendered him disabled. The diagnosis and subsequent surgery do not in and of themselves provide proof of disability. Chinn has provided no medical evidence clarifying when exactly he began feeling symptoms of the

necrosis—offering only that it occurred "over time." Chinn has failed to demonstrate a reversible error by the ALJ. Her finding was supported by substantial evidence available in the record.

2. Step Four – ALJ Bias

Chinn's next argument is that substantial evidence does not support the ALJ's RFC finding at Step Four in the sequential evaluation process. He claims that the ALJ demonstrated "clear bias in the post-hearing process" that indicates the ALJ predetermined her assessment in order to deny Chinn benefits based on personal animus (DN 17-1 PageID# 3128). The Commissioner responds that the Court must presume that the ALJ exercised her authority with "honesty and integrity" and Chinn has not overcome this burden to demonstrate bias (DN 22 PageID # 3149).

At the fourth step in the sequential evaluation process, the Administrative Law Judge makes findings regarding the weight assigned to medical source statements in the record[1], the claimant's credibility[2], the claimant's residual functional capacity, the physical and mental demands of the claimant's past relevant work, and the claimant's ability to return to the past relevant work. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946. The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a),

---

[1] 20 C.F.R. §§ 404.1527(c), 416.927(c).

[2] In assessing a claimant's residual functional capacity the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 96-7p.

404.1546, 416.929, 416.945(a), 416.946; Social Security Ruling 96-5p; Social Security Ruling 96-7p.

Chinn claims that despite issuing a partial favorable ruling and recognizing his cardiac condition (as of October 12, 2015), his hip condition, back pain, anxiety, and depression as severe impairments, the ALJ failed to fully consider the resulting limitations from these conditions before October 12, 2015 and failed to at all consider his shoulder condition (DN 17-1 PageID # 3128). Chinn attributes this apparent failure to "clear bias" against him personally (Id.). Chinn's claim is unsupported by the record and without merit.

First, the ALJ did consider the resulting limitations of Chinn's disabilities prior to October 15, 2015. The ALJ conducted a thorough analysis of Chinn's condition after his first heart attack in 2013 (Tr. 23). She noted that he was advised not to work for four weeks. He developed a pulmonary embolism following surgery, but this was resolved with medication. Despite Chinn's reported chest pain, x-rays showed only mild effusion, and pain medication was prescribed. By October 2013, Chinn was considered stable from a cardiac standpoint, to the point where he was able to exercise three times a week (Tr. 23). By November 2014, Chinn reported being active and had no complaints of chest pain (Tr. 23).

Similarly, the ALJ considered Chinn's hip and back pain before the disability date of October 12, 2015. The ALJ considered Chinn's reports of pain with left hip movement but noted no signs of numbness. She noted that it was recommended he walk with a cane and by September 18, 2015 x-rays showed a normal left hip. The ALJ also discussed Chinn's claims of back pain in July 2014 and noted he underwent no significant treatment for his condition (Tr. 24). Regarding Chinn's shoulder issue, it has already been noted that the issue was diagnosed only a month before

the ALJ found Chinn to be disabled and Chinn has provided no evidence to support the claim that it was debilitating prior to that date.

Not only is Chinn's claim contradicted by the ALJ's opinion, his accusations of bias are unsupported by the record. When an ALJ is accused of bias the Court must presume that the ALJ exercised her decision-making power with "honesty and integrity." Collier v. Comm'r of Soc Sec., 108 F. App'x 358, 363-64 (6th Cir. 2004). The burden of overcoming this presumption is on the party asserting bias, and the presumption can only be overcome with convincing evidence that actual bias or prejudgment is present. Collier, 108 F. App'x at 364. The evidence must be part of the record and cannot be based on speculation or inference. Carrelli v. Comm'r of Soc. Sec., 390 F. App'x 429, 436 (6th Cir. 2010). Chinn provides nothing but speculation and inference. He claims without supporting evidence that the ALJ intentionally prolonged the proceedings by twice requesting the same interrogatories from a medical expert (DN 17-1 PageID # 3125). Chinn also claims, without evidence, the ALJ called the same medical expert to testify at the second hearing specifically to contradict earlier opinions (Id. at 3129). He also takes issue with the ALJ's "demeanor and tone" (Id.). This does not overcome the presumption that the ALJ discharged her duties with "honesty and integrity. See Collier, 108 F. App'x at 364. The ALJ fully engaged with extensive medical records in her opinion and held two hearings on the matter. There is no evidence that the ALJ failed to fully develop the record and give Chinn a fair hearing. An objective observer would not be convinced that the ALJ's fairness need be questioned. Id. Chinn's argument fails.

3. Step Four – Opinion Evidence Weight

Chinn's third argument is that the ALJ erroneously discounted the opinion of Susan Daniel, APRN when determining Chinn's RFC. Chinn argues that as a treating source Nurse Daniel's

12

opinion should have been giving controlling weight, and the ALJ failed to provide "good reasons" for discounting her opinion (DN 17-1 PageID # 3130). The Commissioner responds that Daniel is a nurse practitioner, and therefore not an acceptable medical source under the regulations. Rather, nurse practitioners are considered an "other source" under the regulations and are not entitled to any special degree of deference (DN 22 PageID # 3151-52).

Under the regulations nurse practitioners are not considered an acceptable medical source. They are an "other source." 20 C.F.R. § 404.1513. "Other source" opinions may provide evidence of a claimant's impairment, but they cannot establish the existence of a disability. Engebrect v. Comm'r of Soc. Sec., 572 Fed App'x. 392, 398 (6th Cir. 2014). Other sources are not entitled to any particular degree of deference, and the ALJ is free to assign it any weight she feels appropriate based on the evidence in the record. Noto v. Comm'r of Soc. Sec., 632 Fed. App'x 243, 248-49 (6th Cir. 2015). However, the ALJ is required to review all relevant evidence in the record, including from other sources. The ALJ must explain the weight given to opinions from other medical sources. SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).

Here, the ALJ fully considered Nurse Daniel's opinion. She opined that Chinn could not work full time due to his combination of physical and mental impairments (Tr. 27). The ALJ assigned little weight to this opinion because her own progress notes did not support such a severe limitation. For example, Nurse Daniel opined that Chinn had debilitating depression, but her progress notes focus on anxiety and do not indicate that it is as limiting as her statement suggests and is not supported by other evidence in the record (Tr. 27). The ALJ also noted Nurse Daniel's reported debilitating chest pain, but other evidence in the record shows Chinn's pain was controlled with medication and would not keep him from working (Tr. 27). The ALJ's consideration of Nurse

13

Daniel's testimony was commensurate with Social Security regulation requirements. Her RFC finding was supported by substantial evidence and therefore cannot be disturbed.

4. Step Five

Chinn's final argument is that there is not substantial evidence supporting the ALJ's finding that jobs existed in the regional or national economy that he was capable of performing (DN 17-1 PageID# 3132). Specifically, Chinn argues that the vocational expert relied on obsolete job descriptions in the Dictionary of Occupational Titles (DOT) when he testified that Chinn was able to perform the following jobs: Stuffer, DOT 731.685-014; 2) Hand Packager, DOT 559.687-074; and 3) Lens Inserter, DOT 713.687-026 (Tr. 28). Chinn contends the VE should have supplemented his testimony with an up to date reliable source such as O*NET (DN 127-1 PageID # 3132). The Commissioner responds that it is a plaintiff's duty to elicit any inconsistencies with a vocational expert's testimony and the Dictionary of Occupational Titles (DOT) on cross examination, because Chinn failed to do this at the hearing he has waived the argument (DN 22 PageID # 3152-54). He adds that even if the argument is not waived, the vocational expert's testimony provides substantial evidence for the ALJ's finding (Id.).

The Court will begin with Defendant's argument that Plaintiff forfeited this claim by failing to raise it during the administrative hearing through cross-examination of the vocational expert. First, Defendant's reliance on Kepke v. Comm'r of Soc. Sec., 636 F. App'x. 625, 636 (6th Cir. 2016) is misplaced. Kepke's argument concerned the Administrative Law Judge's failure to include a specific physical limitation in the hypothetical questions posed to the vocational expert.[3]

---

[3] The hypothetical questions to the vocational expert failed to specify the frequency of the claimant's need to alternate between sitting and standing. Kepke v. Comm'r of Soc. Sec., 636 F. App'x. 625, 636 (6th Cir. 2016).

Id. The Sixth Circuit held "[b]ecause Kepke failed to probe this alleged deficiency at the ALJ hearing, she forfeited this argument." Id. Implicit within this holding is the Sixth Circuit's recognition that Kepke knew about this physical limitation at the time of the administrative hearing and, therefore, she could have addressed the purported deficiency through cross-examination of the vocational expert. Id.

In contrast to the circumstances in Kepke, Plaintiff had no notice that the vocational expert would identify Stuffer, DOT 731.685-014; Hand Packager, DOT 559.687-074; and Lens Inserter, DOT 713.687-026 in response to the ALJ's hypothetical question (Tr. 28). Prior to the administrative hearing Plaintiff could not have conducted research about these three jobs on the DOT and O*NET[4]. Moreover, because there are literally thousands of jobs identified in the DOT[5], it is unlikely that Plaintiff had sufficient personal knowledge about these job descriptions to effectively cross-examine the vocational expert "on the fly." In order to effectively cross-examine the vocational expert about the three identified jobs, Chinn would have needed to conduct research on the DOT and O*NET after the vocational expert identified these jobs. However, it would be impractical to conduct such research during the hearing. This places an unreasonable burden on a claimant. Therefore, the Commissioner's waiver argument fails.

Defendant's attempt to rebut Plaintiff's argument with Social Security Ruling 00-4p and cases such as Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 605-06 (6th Cir. 2009) and Isaac v.

---

[4] The United States Department of Labor replaced the DOT with O*NET, a database that is continually updated based on data collection efforts that began in 2001. https://www.onetcenter.org/dataCollection.html; and https://www.oalj.dol.gov/LIBDOT.HTM

[5] https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTINTRO.HTM

Colvin, No. 3:13-cv-125, 2014 WL 2931579, at *12-13 (S.D. Ohio, June 27, 2014) is also misguided. The purpose of this policy ruling is to emphasize that before deciding whether a vocational expert's testimony supports a disability determination, Administrative Law Judges must identify and obtain a reasonable explanation for any conflicts between the occupational evidence provided by the vocational expert and information in the DOT, including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO). SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000); Lindsley, 560 F.3d at 606; Martin v. Comm'r of Soc. Sec., 170 F. App'x 369, 374 (6th Cir. 2006). This policy ruling does not impose a duty on Administrative Law Judges to further interrogate a vocational expert when he or she testifies that there is no conflict between the vocational opinion and information in the DOT. S*ee* SSR 00-4p; Lindsley, 560 F.3d at 606. Further, when a vocational expert bases his opinion on the contents of the DOT and the Administrative Law Judge relies on that testimony, SSR 00-4p does not impose a duty on the Administrative Law Judge to resolve conflicts between the vocational expert's testimony and information from a different vocational publication. *See* Poe v. Comm'r of Soc. Sec., 342 F. App'x 149, 158 (6th Cir. 2009) (the claimant's own vocational expert based his opinion on information from the Occupational Outlook Handbook). As the Ninth Circuit insightfully explained, "[SSR 00–4p] merely provides that where there is a conflict between the DOT and another source, and the ALJ relies on the other source, the ALJ must explain his reasons for doing so." Lee v. Barnhart, 63 F. App'x. 291, 292–93 (9th Cir.2003). Because such circumstances do not exist here, SSR 00-4p is inapplicable.

The Sixth Circuit has made clear that there is no "magic number" that qualifies as "significant" for the purposes of satisfying this prong of the disability inquiry. Hall v. Bowen, 837

16

F.2d 272, 275 (6th Cir. 1988). Instead, the Court must make a fact-specific inquiry that is guided by common sense:

> We are not blind, however, to the difficult task of enumerating exactly what constitutes a "significant number." We know that we cannot set forth one special number which is to be the boundary between a "significant number" and an insignificant number of jobs. . .. A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; *the reliability of the vocational expert's testimony*; the reliability of the claimant's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.

Id. (emphasis added). Here, Chinn asserts that the vocational expert's testimony is not reliable because it is based on obsolete occupational descriptions in the DOT.

The vocational expert based his testimony on three job descriptions contained in the DOT, a document published by the United States Department of Labor ("DOL") that was last updated in 1991.[6] The regulations provide that the Commissioner "will take administrative notice of reliable job information available from various governmental and other publications." 20 C.F.R. §§ 404.1566(d), 416.966(d); Social Security Ruling 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). The regulations include the DOT within their non-exhaustive list of examples of sources from which reliable job information is available. 20 C.F.R. §§ 404.1566(d)(1)-(5), 416.966(d)(1)-(5); see Wennersten v. Colvin, No. 12-cv-783-bbc, 2013 WL 4821474, at * (W.D. Wis. Sept. 10, 2013) ("the list is not exclusive"). Thus, a vocational expert may base his testimony on job descriptions

---

[6] https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTSPEC.HTM

in the DOT. However, the Sixth Circuit, albeit in an unpublished opinion, has made the following cautionary statement: "*common sense dictates* that when such descriptions appear obsolete, a more recent source of information should be consulted." Cunningham v. Astrue, 360 F. App'x 606, 615 (6th Cir. 2010) (emphasis added).

According to the DOT, Stuffer and Lens Inserter have not ben updated since 1977. Hand Packager has not been updated since 1986. When the vocational expert responded to the ALJ's hypothetical question his testimony was based on occupational deceptions in the DOT that are 42 and 33 years old, respectively. At the time of Chinn's administrative hearing, more current occupational descriptions were available. Specifically, the Department of Labor replaced the DOT with O*NET, a database that is continually updated based on data collection efforts that began in 2001.[7] See Cunningham, 360 F. App'x at 616; Johnson v. Berryhill, No. 4-16-CV-00106-HBB, 2017 WL 245326, *8 (W.D. Ky. June 6, 2017). Like the Sixth Circuit in Cunningham, this Court will compare the job descriptions in the DOT with those set forth in O*NET to determine whether the vocational expert based his testimony on obsolete job descriptions.

The vocational expert identified Stuffer (DOT 731.685-014) as a job Chinn is capable of performing. It has an SVP of 2. The most similar occupation in the O*NET is Packaging and Filling Machine Operators and Tenders 51-9111. The position requires "arm-hand steadiness" and "manual dexterity" and has an SVP range of 4-6. The position often requires employees to stand "continuously or almost continuously". The DOT lists Hand Packager with an SVP of 2. The most similar occupational definition in O*NET is 51-9061.00 – Inspectors, Testers, Sorters,

---

[7] https://www.onetcenter.org/dataCollection.html

Samplers, and Weighers. The SVP range for this position is 4-6. Likewise, for Lens Inserter, the most similar occupational definition in O*NET is "51-9199.00 – Production Workers, All Other."[8] This is a catch all title that "represents a wide range of characteristics." There is no specific job information and no SVP score provided. These positions are either inconsistent with the ALJ's RFC assessment or too vague to determine if Chinn is capable of performing them.

The discrepancies between the DOT and O*NET present sufficient doubt as to the reliability of the vocational expert's testimony to warrant a conclusion that the ALJ's step five determination was not supported by substantial evidence. After all, "[i]f the only jobs that the applicant is physically and mentally capable of doing no longer exist in the American economy (such as pin setter, phrenologist, leech collector, milkman, pony express rider, and daguerreotypist), the applicant is disabled from working, and likewise, as a realistic matter, if there is an insignificant number of such jobs." Herrmann v. Colvin, 772 F.3d 1110, 1113 (7th Cir. 2014). Notably, however, the undersigned is not concluding that these positions are obsolete, nor that they do not exist in significant numbers. Rather, this is a recognition that Plaintiff has created sufficient doubt to merit remand so that a vocational expert can determine whether these positions, as performed in the modern economy, are still occupations available to Chinn given his age, experience, education, and residual functional capacity.

Accordingly, the final decision of the Commissioner will be reversed, and this matter will be remanded, pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for reconsideration of whether the DOT listings were reliable in light of the economy as it existed at

---

[8] https://www.onetonline.org/link/summary/51-9199.00

the time of the hearing before the ALJ.  See Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 175 (6th Cir. 1994) (sentence four of 42 U.S.C. § 405(g) authorizes a post judgment remand).

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **REVERSED.**

**IT IS FURTHER ORDERED** that this matter is **REMANDED**, pursuant to 42 U.S.C. § 405(g), to the Commissioner for further proceedings.

Copies:	Counsel